**CONNECTICUT STATE DEPARTMENT OF PUBLIC WELFARE, Petitioner,**

v.

**DEPARTMENT OF HEALTH, EDUCATION, AND WELFARE, SOCIAL AND REHABILITATION SERVICE, et al., Respondents.**

No. 1097, Docket 71-1574.

United States Court of Appeals, Second Circuit.

Argued Aug. 13, 1971.

Decided Sept. 3, 1971.

210

———◆———

Francis J. MacGregor, Asst. Atty. Gen., East Hartford, Conn. (Robert K. Killian, Atty. Gen., Hartford, Conn., on the brief), for petitioner.

Leonard Schaitman, Atty., Dept. of Justice, Washington, D. C. (L. Patrick Gray, III, Asst. Atty. Gen., Morton Hollander, Atty., Dept. of Justice, Washington, D. C., on the brief), for respondents.

John Q. Tilson, Jr., New Haven, Conn. (Jeremy G. Zimmerman, New Haven, Conn., on the brief), for intervenor Connecticut Hospital Assn.

William H. Clendenen, Jr., New Haven, Conn. (David M. Lesser, New Haven, Conn., Nancy Duff Levy and Steven Cole, New York City, Richard Cramer, Hartford, Conn., Roger Rice, Washington, D. C., on the brief), for intervenors The New Haven Moms, Quinnipiac Welfare Rights Mothers, The Willimantic Welfare Rights Organization, Welfare Recipients are People, The National Welfare Rights Organization and its Connecticut affiliates.

Before FEINBERG, MULLIGAN and TIMBERS, Circuit Judges.

FEINBERG, Circuit Judge:

The Connecticut State Department of Welfare petitions under 42 U.S.C. § 1316 for review of the decision of the Secretary of the Department of Health, Education, and Welfare (HEW) acting through the Administrator of the Social and Rehabilitation Service (SRS), 45 C. F.R. § 213.32(d), that certain Connecticut public assistance plans are not in conformity with federal law. As a sanction, the Secretary ordered that, effective July 1, 1971, federal financial support for the Connecticut programs be terminated until the state placed its plans in conformity. On June 28, 1971, this court stayed the Secretary's order pending disposition of the petition for review but ordered Connecticut, pending further order of this court, to comply with certain aspects of the Secretary's decision. For reasons explained below, we affirm the order of the Secretary.[1]

## I.

Before discussing Connecticut's objections to the Secretary's order, it would be helpful to outline both the federal-state cooperative public assistance programs under the Social Security Act and the prior administrative proceedings in this case. Pursuant to the Act, the federal government provides grants-in-aid to states that administer programs for supplying assistance to specified categories of needy individuals and families. The five programs involved in this case are: (1) Old Age Assistance (OAA) under Title I of the Act, 42 U.S.C. § 301 et seq.; (2) Aid to Families with Dependent Children (AFDC) under Title IV, 42 U.S.C. § 601 et seq.; (3) Aid to the Blind (AB) under Title X, 42 U.S.C. § 1201 et seq.; (4) Aid to the Permanently and Totally Disabled (APTD) under Title XIV, 42 U.S.C. § 1351 et seq.; and

(5) Medical Assistance (MA) under Title XIX, 42 U.S.C. § 1396 et seq.

The state programs are financed by the federal government on a matching fund basis. State participation is not required by the Social Security Act. States may choose not to apply for federal assistance or may join some, but not all, of the programs. Further, the establishment of criteria for need and other factors of eligibility, and the level of payments, are left largely to the states. At the same time, the Act prescribes specified requirements with which all state programs must comply. And so the states are required to submit to the Secretary of HEW, and have approved by him, a plan that describes the programs adopted by the state in conformity with federal law requirements. Once approved, the plan continues to be subject to the Secretary's scrutiny to determine conformity to federal law. 42 U.S.C. §§ 302, 602, 1202, 1316, 1352, 1396a.

If the Secretary determines that an approved state plan no longer so conforms, the Act requires that federal payments be terminated, in whole or in part, until the plan meets federal criteria. Moreover, while the approved plan may conform to federal law, the Act requires that federal payments be terminated, in whole or in part, if the Secretary finds that the state's administration of the plan does not comply substantially with federal law. The Act also establishes a procedure for determining whether a state plan conforms to, or state administration substantially complies with, the requirements of federal law. Under the statutory procedure, the Secretary must give reasonable notice and opportunity for a hearing to the state agency administering the plan. 42 U.S.C. §§ 304, 604, 1204, 1316, 1354,

---

1. There are also two groups of intervenors, The Connecticut Hospital Association (Hospital intervenors) and The National Welfare Rights Organization and its Connecticut affiliates, The New Haven MOMS, Quinnipiac Welfare Rights Mothers, The Willimantic Welfare Rights Organization, and Welfare Recipients are People (collectively, WRO intervenors). Both groups participated in the HEW proceedings. See NWRO v. Finch, 139 U.S.App.D.C. 46, 429 F.2d 725 (1970); 45 C.F.R. § 213.15.

1396c. The Act also provides that a state that is aggrieved by the Secretary's determination after such a hearing may petition a United States court of appeals for judicial review of the Secretary's order. 42 U.S.C. § 1316.

In 1970, the Secretary, acting through the Administrator of SRS, notified the Commissioner of the Connecticut State Welfare Department that a hearing would be held to determine whether five of Connecticut's public assistance plans (OAA, AFDC, AB, APTD, and MA) were in conformity with federal law, and, if not, whether federal grants-in-aid to those programs should be terminated. The notices described the specific issues to be considered and stated that HEW and Connecticut officials had been unable to reach agreement on those issues after negotiations.

Subsequently, the Administrator decided to remove certain issues from the hearing. The hearing, preceded by a pre-hearing conference and a stipulation of facts, was held on December 1, 2 and 3, 1970. On March 30, 1971, the hearing examiner issued his recommended findings and proposed decision. He found that, with respect to all eight issues considered at the hearing, the Connecticut plans did not comply with federal law. After the parties submitted written comments on the recommended report of the examiner, the Administrator adopted the conclusion of the examiner on May 28, 1971. As stated above, the Administrator ordered that federal financial support to Connecticut's public assistance programs be terminated as of July 1, 1971, until the state placed its plans in conformity.

Although the May 28, 1971 decision found Connecticut out of conformity with respect to eight issues, the parties are in agreement or are approaching agreement on five of those issues. Thus, in this court, Connecticut contests the Secretary's determination on only the following three issues: (1) the computation of inpatient hospital costs under MA; (2) the computation of the "earned income" disregard under a work

incentive program; and (3) the computation of deductible work related expenses under the same program. In addition, Connecticut argues that the HEW hearing was procedurally unfair.

## II.

Examining the last objection first, Connecticut claims that the conformity hearing procedures, 45 C.F.R. § 213, were unfair because the hearing officer lacked the power to subpoena witnesses, papers and other evidence, 45 C.F.R. § 213.22(b), and because there is no provision for discovery by deposition or interrogatories. Connecticut contends that it was thus unable to examine the Secretary or his subordinates about the rationale and basis for the regulations it was allegedly violating. Connecticut candidly admits that it cannot find support for its argument in the fifth amendment, see South Carolina v. Katzenbach, 383 U.S. 301, 323, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966), but rests its right to fair procedure on the tenth amendment.

Without considering whether Connecticut's reading of the tenth amendment is correct, we think it clear that the conformity hearing was procedurally fair. Due process is not an unvarying standard; what process is due always depends upon the interests affected. Goldberg v. Kelly, 397 U.S. 254, 263, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). The only issues at the hearing were ones of law—whether Connecticut's various public assistance plans conformed with the federal regulations and whether those regulations were reasonable and in accord with the Social Security Act. There was no dispute regarding adjudicatory facts. In such circumstances due process does not require a full evidentiary hearing but only adequate opportunity for argument. See 1 K. Davis, Administrative Law § 7.01 (1958 ed. and 1970 Supp.). Clearly the state was provided with that opportunity. Moreover, Connecticut was allowed to cross-examine all witnesses and to submit all relevant evidence. 45 C.F.R.

§ 213.23. Indeed, the state presented an expert witness who testified why the medical assistance regulations were unreasonable. We conclude that Connecticut has not shown how its rights were prejudiced by the hearing procedures.

### III.

On the three substantive issues raised by Connecticut, we must affirm the Secretary's determination if, with proper deference to HEW as "the agency charged with the administration" of the Social Security Act, Lewis v. Martin, 397 U.S. 552, 559, 90 S.Ct. 1282, 1286, 25 L.Ed.2d 561 (1970), we conclude that (1) the regulations, promulgated under 42 U.S.C. § 1302, are within the Secretary's "broad rule-making powers," Thorpe v. Housing Authority, 393 U.S. 268, 277 n. 28, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), and (2) the Secretary's determination that Connecticut's plans do not conform with those regulations is "supported by substantial evidence." 42 U.S.C. § 1316(a) (4). While the issues are technically complicated, we believe that both tests are met and affirm the Secretary's order.

### (a) Inpatient hospital care

As to the issue of reimbursement for inpatient hospital care under MA, Connecticut argues that the Secretary's regulations are unreasonable and, in any event, that the state is in compliance with those regulations. The Social Security Act provides "for payment of the reasonable cost (as determined in accordance with standards approved by the Secretary and included in the plan) of inpatient hospital services provided un-

der the plan." 42 U.S.C. § 1396a(a) (13) (D). The Secretary has interpreted this to mean payment of approximately the actual costs of the services provided. 45 C.F.R. § 250.30. This interpretation is reasonable and in accordance with the intent of Congress that "the costs of services of individuals covered by the program will not be borne by individuals not covered."[2] See Catholic Medical Center of Brooklyn and Queens, Inc. v. Rockefeller, 305 F.Supp. 1256, 1268 (S.D.N.Y.1969), aff'd on the opinion below, 430 F.2d 1297 (2d Cir.), appeal dismissed, 400 U.S. 931, 91 S.Ct. 246, 27 L.Ed.2d 262 (1970).[3]

Connecticut, however, provides that hospitals shall be reimbursed by the state for the actual costs of providing inpatient hospital care to MA patients unless that cost exceeds the "charge to the general public for ward services or the lowest charge for semi-private services if the hospital has no ward facilities," in which case the hospital is reimbursed for the lower amount. Conn. Gen.Stat. § 17–312. The obvious effect of the Connecticut plan is to place a ceiling on the amount that can be paid to a participating hospital for inpatient care. Apparently there are approximately 15 hospitals in Connecticut with one or more beds for which the charge to the general public is below the actual costs to the hospitals for services rendered.

On its face, the Connecticut plan appears not to conform with the federal regulation. Indeed, the state's only witness at the hearing so testified. Connecticut argues that its statute is in conformity because the 15 hospitals volun-

---

2. Although payment may be made on various bases, the objective, whatever method of computation is used, will be to approximate as closely as practicable the actual cost (both direct and indirect) of services rendered to the beneficiaries of the program so that under any method of determining costs, the costs of services of individuals covered by the program will not be borne by individuals not covered, and the costs of services of individuals not covered will not be borne by the program.

H.R.Rep.No.213, 89th Cong., 1st Sess. 32 (1965).

3. Connecticut's reliance on a recent House report, H.R.Rep.No.92–231, 92nd Cong., 1st Sess. 101 (1971) is misplaced. That report is on a bill which has not yet been enacted, and, if anything, indicates that the Secretary's interpretation is in accord with the Social Security Act as presently worded.

tarily charge less than actual costs for their cheapest service because of money received from endowments and other charitable contributions and because of large profits made by ancillary services. Connecticut contends that because of this income the costs of services to covered patients is not borne by non-covered patients and that "the difference between actual cost and charge to the general patients [is] not being made up by the general patient but from other income all patients were expected to share."[4] Whatever the state's justification for its policy, it is clear that as to those hospitals with a bed charge of less than actual costs Connecticut does not make full payment of the actual reasonable cost of inpatient services. The state statute, Conn.Gen.Stat. § 17–312, therefore, is contrary to federal law and the Secretary's decision on this issue is supported by substantial evidence.[5] Cf. Catholic Medical Center of Brooklyn and Queens, Inc. v. Rockefeller, *supra.*

(b) *Earned income disregard*

 The remaining two issues arise out of a work incentive program under the Social Security Act. The Act. provides that each state plan for OAA, AFDC, AB, and APTD must provide that the state shall, in determining an applicant's need for assistance, take into consideration "any other income and resources" of the person claiming aid, "as well as any expenses reasonably attributable to the earning of any such in-

come." 42 U.S.C. §§ 302(a) (10) (A), 602(a) (7), 1202(a) (8), 1352(a) (8). The Act further provides that, in making this determination of need, the states may, under their OAA and APTD plans, and must, under their AFDC and AB plans, disregard certain amounts of "earned income." 42 U.S.C. §§ 302(a) (10) (A), 602(a) (8) (A) (ii), 1202(a) (8), 1352(a) (8). The purpose of these provisions was to provide "an incentive for people to take employment." See, e. g., S.Rep.No.744, 90th Cong., 1st Sess. 157–59 (1967). Connecticut admits that its plan authorized by statute, Conn. Gen.Stat. 17–2,[6] is not in compliance with the HEW regulations, 45 C.F.R. §§ 233.20(a) (7) (i), .20(a) (3) (iv) (*a*), but argues that those regulations are unreasonable.[7]

As admitted by Connecticut, its method of computing the earned income disregard is not in conformance with HEW's method. The Secretary's interpretation is that the specified earnings disregard is to be applied to the "gross amount of 'earned income'" before work-related expenses are deducted. 45 C.F.R. § 233.20(a) (7) (i). Connecticut, by contrast, first deducts work-related expenses from gross income and then applies the earned income disregard to the remainder. Because the earned income disregard is partially a percentage of "earned income," defining "earned income" as gross income less work-related expenses, as Connecticut does, results in a smaller income disre-

---

4. Petitioner's Brief at 9–10.

5. There is some question whether the Administrator ruled that Connecticut's plan was also out of conformance because it failed to make retroactive payments or consider interest expenses when computing "reasonable cost." These issues were specifically set forth in a hearing notice, dated October 5, 1970. That notice was later modified so that these two issues were no longer explicitly referred to. The Administrator's decision is not clear on the question. The decision states only that "the nonconformity arises out of

the State's failure to use the proper formula for the payment of the reasonable costs of inpatient hospital care." In these circumstances, we think it advisable not to rule on these two subsidiary issues, since we are not sure that the Secretary did.

6. We are informed by the WRO intervenors that this statute has been repealed effective January 1, 1972.

7. Although the Administrator's decision on these two issues applied to OAA, APTD, AB, and AFDC, Connecticut seems to contest the decision only in regard to AFDC.

gard and a lower assistance payment than under the federal system.

Connecticut argues that Congress intended to apply the income disregard to net rather than gross income. Moreover, citing Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), and King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), it claims that the states rather than the Secretary should have wide latitude in defining "earned income" when allocating their resources to set their standards of need and level of payments and that, unless the language of Congress is clear, the Secretary should not second guess state welfare officials. In support of these arguments, the state points to the failure of Congress to use the term "gross income" in the Act, to an earlier interpretation of the Secretary, 33 Fed. Reg. 10230 (1968), to HEW State Letter No. 1074 (January 8, 1970), to a 1970 House Ways and Means Committee Report on the proposed Family Assistance Act of 1970 (H.R. 16311), H.R.Rep.No. 91–904, 91st Cong., 2d Sess. 14 (1970), and to a Report made by the Commissioner of the Community Services Administration to Congress on July 7, 1970.

Connecticut, however, has not shown that the Secretary's use of gross income in the HEW regulation is unreasonable or contrary to the Act; it has only demonstrated that its own interpretation of the Act may also be a reasonable one. This is not enough. As noted above, the income disregard provisions were added to the Social Security Act to encourage recipients to obtain employment and work their way off the welfare rolls. See Conner v. Finch, 314 F.Supp. 364, 367 (N.D.Ill.1970), aff'd sub nom., Conner v. Richardson, 400 U.S. 1003, 91 S. Ct. 575, 27 L.Ed.2d 618 (1971). The Secretary's formula results in greater payments to recipients who work than does Connecticut's and, therefore, provides recipients with greater incentives for engaging in gainful employment.

This is certainly consistent with the congressional intent.

The documents cited by Connecticut do not show that the Secretary's interpretation is unreasonable. The earlier HEW interpretation, 33 Fed.Reg. 10230 (1968), was an interim policy statement issued to obtain the views of interested parties. A superseded interim statement is hardly entitled to controlling weight. Cf. American President Lines, Ltd. v. Federal Maritime Commission, 114 U.S.App.D.C. 418, 316 F.2d 419 (1963). HEW State Letter No. 1074, read in its entirety, is consistent with the Secretary's present interpretation and even refers to the specific regulation here in question. The 1970 Report of the Commissioner of the Community Services Administration does support Connecticut's interpretation, but HEW contends that the Report was an oversight. While such "oversights" are to be deplored, such a report cannot repeal a binding regulation duly promulgated by the Secretary. Finally, the 1970 Ways and Means Committee report adds little support to Connecticut's case. Not only is it post-enactment legislative history directed primarily to proposed legislation, but it can easily be read as consistent with the Secretary's interpretation. See also H.R.Rep.No.92–231, 92d Cong., 1st Sess. 36, 177, 204 (1971).

■ Nor does that interpretation impermissibly interfere with the state's discretion in determining the standard of need or the level of benefit payments. See Rosado v. Wyman, 397 U.S. 397, 408–409, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). It only provides an administrative construction of a requirement that certain income be exempted in determining, under criteria set by Congress, how much of the state-determined standard of need is met by the recipient's own income. Congress, of course, has the right to condition the grant of federal moneys upon state fulfillment of federal requirements. King v. Smith, 392 U.S. 309, 333 n. 34, 88 S.Ct. 2128, 20 L.Ed.2d

1118 (1968). Accordingly, we believe that the Secretary's interpretation is reasonable and consistent with the Act, and, therefore, affirm his determination as to the earned income disregard issue.[8] See Amos v. Engelman, CCH Pov.L.Rep. ¶11,983, at 12,409 (D.N.J.1970).

(c) *Work related expenses*

█ The final question to be resolved concerns the Secretary's interpretation of deductible "expenses reasonably attributable" to the earning of income under the work incentive program in the Act. 42 U.S.C. §§ 302(a) (10) (A), 602(a) (7), 1202(a) (8), 1352(a) (8). The Secretary's regulations do not provide an exhaustive or final list of the types of deductible expenses. However, the regulations do call for the exclusion from the definition of income of all "expenses reasonably attributable to the earning of income," specifying as examples of such expenses, "personal expenses such as income-tax deductions, lunches, and transportation to and from work," and "expenses of employment which are not personal, such as cost of tools, materials, special uniforms, or transportation to call on customers." 45 C.F.R. §§ 233.20(a) (3) (iv) (*a*), .20(a) (6) (iv). At the hearing, Connecticut stipulated that, aside from certain child care payments under AFDC, it deducted as work-related expenses only specified payroll deductions, i. e., withholding tax, social security tax, mandatory group life insurance premiums, mandatory retirement plan payments, mandatory union dues, Blue Cross and other hospital insurance for persons below 65 years of age. See Conn.Gen.Stat. § 17–2; I Connecticut Welfare Manual, Chpt. 3, § 332.32. Since the hearing, Connecticut has agreed to deduct transportation costs to and from work.

It is difficult to fathom exactly what Connecticut argues on this point. The state apparently believes that the only issue is whether the Secretary's regulation is reasonable insofar as it requires that lunch expenses be deducted. But Connecticut has misunderstood the full import of the Administrator's ruling. That ruling was not directed to the lunch money question but rather to Connecticut's overall policy of arbitrarily limiting the types of deductible work-related expenses. The Administrator stated that:

> While it is possible that, in some cases, there may be disputes as to what expenses are included in [the federal standard] and which expenses fall outside it, no such issue is involved in this case. For, it is clear that Connecticut has enacted an altogether too narrow view of the types of expenses that are reasonably attributable to the earning of income and has not complied with a Federal regulation which represents a perfectly reasonable interpretation of the requirements of the Social Security Act.

A similar issue was presented in Williford v. Laupheimer, 311 F.Supp. 720 (E.D.Pa.1969), where Pennsylvania's $50 limitation on deductible work-related expenses was challenged as inconsistent with 42 U.S.C. § 402(a) (7) and 45 C. F.R. § 233.20(a) (3) (iv) (*a*). The court held the state limitation invalid, and stated, 311 F.Supp. at 722:

> The imposition of such a maximum deduction violates the clear Congressional directive that the state shall allow deductions for "any expenses reasonably attributable to the earning of any such income." * * * To date, [Congress] has not seen fit to impose any limitation of work-related income

---

8. The Administrator's similar ruling on this same issue is being challenged by the State of Arizona in its petition for review presently before the Ninth Circuit. Arizona State Department of Public Welfare v. HEW, Dkt. No. 71–1177 (Argued May 25, 1971).

deductions; the states are not free to do otherwise.

Nor is the decision in Amos v. Engelman, CCH Pov.L.Rep. ¶ 11,983, at 12,-409 (D.N.J.1970), contrary. In that case, a three-judge court upheld New Jersey's $50 limitation only because it had not been shown that the named plaintiff or the class represented had incurred work-related expenses in excess of the maximum. In the *Williford* case, plaintiff established that she had legitimate expenses of $120.40 monthly, well over the Pennsylvania maximum of $50. 311 F.Supp. at 722.

The evidence presented at the administrative hearing showed that Connecticut excludes such expenses as additional clothing necessary to employment, cost of better grooming and other personal incidentals, cost of tools, materials, special uniforms, and transportation to call on customers.[9] Therefore, the Administrator's conclusion that Connecticut's limitation on the types of deductible work-related expenses is inconsistent with federal law is clearly supported by substantial evidence, and thus is conclusive.[10] 42 U.S.C. § 1316(a) (4); Gardner v. Alabama Department of Pensions and Security, 385 F.2d 804 (5th Cir. 1967), cert. denied, 389 U.S. 1046, 88 S.Ct. 773, 19 L.Ed.2d 839 (1968). As we find that the regulation is a reasonable interpretation of the Act, we affirm the Secretary's order on the deductible work-related expense issue.

The Secretary's decision and order of May 28, 1971 is affirmed.[11]

---

9. Many of these expenses had been incurred by those who testified at the hearing.

10. In its brief, Connecticut concedes that lunch expenses "where the beneficiary is traveling on company business" should be deducted. But the state maintains that other lunch expenses should not be, and contends that the beneficiaries should do what "the majority of working taxpayers do [and] bring their lunch from home." Petitioner's Brief at 16, 17. The Secretary's brief in turn points out that Connecticut "offers no evidence to support its claim that welfare recipients do not generally incur extra costs of employment though increased lunch expenses." Respondents' Brief at 24 n. 19.

11. Because we affirm the Secretary's order, we find it unnecessary to grant the motion made by the WRO intervenors to modify the injunction entered by this court on June 28, 1971.