**STATE DEPARTMENT OF PUBLIC WELFARE OF the STATE OF TEXAS et al.**

**v.**

**Caspar WEINBERGER et al.**

**Civ. A. No. A–73–CA–185.**

United States District Court,
W. D. Texas,
Austin Division.

Feb. 12, 1975.

John L. Hill, Atty. Gen. of Tex., Frank C. Cooksey, Lynn Taylor, Asst. Attys. Gen. of Tex., David Young, Texas Dept. of Public Welfare, Austin, Tex., for plaintiffs.

David Anderson, John T. Boese, Lawrence S. Ebner, Stuart Schiffer, Asst. U. S. Attys. Gen., Washington, D. C., Hugh P. Shovlin, U. S. Atty., San Antonio, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

ROBERTS, District Judge.

This cause comes before the Court for decision following the submission of evidence, argument and authorities by the parties at trial and by way of post-trial submissions. This suit arises from a dispute between officials of the Texas Department of Public Welfare (DPW) and the United States Department of Health, Education and Welfare (HEW) regarding some $92.7 million worth of services allegedly provided to Texas welfare recipients during the first three quarters of fiscal year 1972 pursuant to the State's plan for providing assistance to the needy, blind, aged, permanently and totally disabled, and families with dependent children. This Court has previously dismissed for want of jurisdiction all claims by Plaintiffs except their claim relating to the alleged failure of the Secretary of Health, Education and Welfare to give notice and the opportunity for a hearing pursuant to 42 U.S.C. §§ 304, 604, 1204 and 1354.

During the first three quarters of fiscal year 1972 the Texas DPW requested and received federal compensation for its welfare expenditures in amounts of $5,137,000, $5,488,000 and $6,607,000, respectively. Beginning in the summer of 1971, however, DPW officials initiated investigation of the possibility that funds appropriated to other State agencies might be used as matching funds for federal financial purchase of social services from those other State agencies. Texas officials soon learned that certain other States utilized such a procedure, enabling those States to receive substantially greater sums from the federal government for the provision of social services than they would otherwise have received. Nevertheless, DPW Commissioner Raymond Vowell's inquiry as to the propriety of such a procedure brought a negative response from HEW officials. In a letter dated September 7, 1971, Dr. Peggy Wildman, the Associate Regional Commissioner for Community Services of HEW's Social and Rehabilitation Service, advised Commissioner Vowell that Texas could use only funds appropriated to the DPW by legislative act as State matching funds.

Subsequently, however, DPW officials learned that the HEW policy set out in Dr. Wildman's September 7 letter was not being followed as policy in other areas of the nation. Consequently, DPW officials renewed their investigation into the possibility of using funds legislatively appropriated to other State agencies as matching funds. Ultimately, on June 15, 1972, Dr. Wildman notified Texas DPW officials that the interpretations embodied in the letter of September 7, 1971, were not in keeping with the current national position of HEW. Thereafter, Texas DPW officials signed agreements with representatives of eleven other State agencies providing for the purchase of certain services from those other agencies. Each of these agreements stated that it was effective July 1, 1971, except for that with the Department of Community Affairs, which stated it was effective September 1, 1971. The eleven other State agencies

indisputably did provide certain social services throughout fiscal year 1972, for which Texas would be entitled to federal matching funds had appropriate procedures been followed throughout the year. Texas officials submitted to HEW a claim in the eventual amount of $92,731,245.00 as the federal share of those services for the first three quarters of fiscal year 1972. Additionally, the Texas DPW submitted a timely claim for the fourth quarter of fiscal year 1972 in an amount of some $34.8 million, including the value of social services provided by other State agencies pursuant to the new contracts with DPW.

While HEW officials approved the State's claim for social services provided by various State agencies pursuant to their interdepartmental contracts with DPW for the fourth quarter of fiscal year 1972, HEW denied the Texas supplemental claim of $92,731,245 for social service expenditures for the first three quarters of that year. In a letter dated January 19, 1973, the Secretary of Health, Education and Welfare, acting through the Regional Commissioner of the Social and Rehabilitation Service, stated four "more important reasons" for the denial: 1) Eligibility for services was not determined at or prior to the time of service delivery; 2) Individual service plans were not developed and maintained on a current basis, but were developed after the fact; 3) There were no records of services provided pursuant to such plans; and 4) Accounting and costing systems were constructed after the fact and were not in effect at the time the services were provided.

Accordingly, the Secretary authorized the payment of no money to Texas pursuant to its supplemental claim for the first three quarters of fiscal year 1972. The Secretary's decision was preceded by no notice, hearing, or opportunity for hearing at which all the facts relevant to Texas' claim might have been developed. DPW officials requested reconsideration of the decision under 42 U.S. C. § 1316 and any other administrative

relief available. After the reconsideration mandated by 42 U.S.C. § 1316(d) the Secretary concurred in the decision of the Regional Commissioner to deny the disputed Texas claim.

After a hearing on Defendant's Motion to Dismiss, this Court dismissed all claims by Plaintiffs except their contention that they were denied notice and hearing pursuant to 42 U.S.C. §§ 304, 604, 1204 and 1354. Those provisions require the Secretary, upon a finding that in the administration of a State plan there is a "failure to comply substantially" with applicable regulations, to notify the State agency that further payments will not be made until the Secretary is satisfied that there is no longer a failure to comply. Such a termination of payments, however, is to be made only "after reasonable notice and opportunity for hearing to the State agency administering or supervising the administration of such plan." 42 U.S.C. §§ 304, 604, 1204, 1354. The holding of such a hearing is not discretionary with the Secretary. Rather, "Should the Secretary call into question the continuing conformity of the plan or of its administration to federal requirements, he *must* provide reasonable notice and opportunity for hearing to the state agency administering the plan." Arizona State Department of Public Welfare v. Department of Health, Education and Welfare, 449 F.2d 456 (9th Cir. 1971) (emphasis added). *See also* Connecticut State Department of Public Welfare v. Department of Health, Education and Welfare, 448 F.2d 209 (2nd Cir. 1971). After such notice and hearing, a State which is dissatisfied with a final determination made by the Secretary may, within 60 days, file a petition for review in the court of appeals for the circuit in which the State is located. 42 U.S.C. § 1316(a)(3).

The Secretary, however, seeks to characterize his action as a "disallowance" under 42 U.S.C. § 1316(d). No provision is made for judicial review of a decision to "disallow" pursuant to Section 1316(d). The Secretary therefore contends that a decision to "disallow" is a

matter of absolute discretion, and that no judicial review is permitted. There is legislative history to support the Secretary's position on this point, but the ultimate question of whether a "disallowance" (as opposed to a decision that there is a "failure to comply substantially" with applicable regulations) is judicially reviewable need not be reached in this case.

Regardless of the denomination or characterization put on the decision by the Secretary, his decision was clearly a determination that the Texas DPW had, in its administration of the Texas plan for providing social services, failed to comply substantially with applicable federal regulations. Pursuant to his authority to make such rules and regulations as may be necessary to the "proper and efficient operation" of State plans (as required by 42 U.S.C. §§ 302(a)(5)(A), 602(a)(5)(A), 1202(a)(5)(A) and 1352(a)(5)(A)), the Secretary has promulgated numerous regulations. In a December 20, 1972, Memorandum given the heading "Subject: Interpretation of Federal Regulations in Determining the Allowability of State Claims for Federal Financial Participation in Expenditures for Social Services," the Administrator of HEW's Social and Rehabilitation Service undertook to interpret these and other regulations promulgated pursuant to the Secretary's rule-making authority.

In his letter of January 19, 1973, the Social and Rehabilitation Service Regional Commissioner advised DPW Commissioner Vowell that the reasons for denying Texas' supplemental claim were "specifically stated" in the SRS Administrator's Memorandum of December 20, 1972. The letter then set out the above-described "more important reasons" for the decision (described in the letter as a "disallowance"), applying interpretations embodied in Issues 4 and 5 of the December 20 Memorandum.

■ Thus, it clearly appears that HEW officials sought the best of both worlds. The decision to withhold funds

purportedly rested upon interpretations of federal regulations required to be a part of the Texas plan for providing social services. To avoid the statutory requirement of notice and hearing prior to such a decision, however, the Secretary proclaimed his decision to be a "disallowance" based upon a statutory authority intended to permit the Secretary to disallow a certain "item or class of items" for which funding is requested, and as to which no judicial review was available. Certainly the effect of the Secretary's decision was to "disallow" a "class of items" from federal financial participation. We do not, however, believe that Congress intended the limited "disallowance" power of the Secretary found in 42 U.S.C. § 1316(d) to subvert the procedures carefully set out in 42 U.S.C. §§ 304, 604, 1204, 1354 and 1316(a) for notice, hearing and judicial review of a determination that the State has failed to comply substantially with applicable federal regulations. We therefore conclude that the Secretary was under a mandatory obligation to provide the Texas Department of Public Welfare reasonable notice and the opportunity for a hearing pursuant to 42 U.S.C. §§ 304, 604, 1204 and 1354. The record is clear that he did not.

■ The question remains of what, if any, relief may be afforded by this Court. The sole and exclusive jurisdiction to review a final decision by the Secretary to terminate federal funds to a State agency rests with the United States Court of Appeals. *See* Gardner v. Alabama, 385 F.2d 804 (5th Cir. 1967). Accordingly, this Court has heretofore dismissed all claims by Plaintiffs directed at the substantive validity or propriety of the Secretary's decision. What is left is Plaintiff's contention that this Court has jurisdiction pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201, and the mandamus statute, 28 U.S.C. § 1361, to find that the Secretary has a mandatory duty to issue reasonable notice and provide an opportunity for hearing prior to with-

holding funds, and to order the Secretary's performance of this duty.

■■ The mandamus power of a district court is not to be lightly invoked. A district court may act under the mandamus statute only when: a) the plaintiff has a clear right to the relief sought; b) the defendant has a clear duty to do the act in question; and c) no other adequate remedy is available. Carter v. Seamans, 411 F.2d 767 (5th Cir. 1969). For reasons heretofore stated, we conclude that these requirements are satisfied in this case. Plaintiffs had a right to receive, and Defendants had a duty to grant reasonable notice and the opportunity for a conformity hearing. 42 U.S.C. §§ 304, 604, 1204, 1354. Arizona State Department of Public Welfare v. Department of Health, Education and Welfare, *supra*; Connecticut State Department of Public Welfare v. Department of Health, Education and Welfare, *supra*. Moreover, no alternative remedy for the wrong alleged has been shown to exist. A similar conclusion was reached in Minnesota v. Weinberger, 359 F.Supp. 789 (D.Minn.1973), although the court there went further and concluded that the district court's mandamus power authorized the court to order the Secretary of the Treasury to pay sums due the States for administration of social service programs.

■■ We therefore conclude that a writ of mandamus should issue, compelling the Secretary to give reasonable notice and the opportunity for a compliance hearing relative to the withholding of funds at issue. Plaintiffs, however, seek to have the Court go a step further and utilize its mandamus power to do indirectly what we cannot do directly. Plaintiffs seek a writ of mandamus ordering the Secretary to afford reasonable notice and hearing prior to the withholding of funds for the first three quarters of fiscal year 1972. Thus, the Secretary would be compelled to pay the State first and then issue notice, hold a compliance hearing, and reach his decision. Indeed, the normal procedure in a compliance case would be for the Secretary to continue payments pending a final decision. This, however, is not a normal case. The purpose of continuing payments pending compliance proceedings is to permit the continuous operation of State plans for the provision of social services. The present case, however, involves payments for services provided some three years ago. This is clearly distinguishable from a situation involving the withholding of payments for future services. The absence of an immediate need for the disputed funds to maintain social services in Texas accentuates the adequacy of the alternative remedy available to Plaintiffs: presentation of their case by way of the compliance hearing mandated herein, with a right of judicial review in the court of appeals. The presence of such an alternative remedy renders invocation of this Court's mandamus power particularly inappropriate. Moreover, we perceive such an application of the mandamus statute to be implicitly precluded by the Tucker Act, 28 U.S.C. § 1346, and by Gardner v. Alabama, *supra*. It is accordingly

Ordered, adjudged and decreed that the Secretary of Health, Education and Welfare be, and hereby is, ordered to provide reasonable notice and opportunity for hearing as provided in 42 U.S.C. §§ 304, 604, 1204 and 1354 and regulations promulgated pursuant thereto, relative to the withholding of $92,731,245.00 claimed by Plaintiffs to be a portion of the federal financial share of social services provided pursuant to State plans for the provision of such services during the first three quarters of fiscal year 1972; that the failure of the Secretary of Health, Education and Welfare to afford reasonable notice and the opportunity for hearing prior to the withholding of said funds be, and hereby is, declared to be unlawful and in violation of 42 U.S.C. §§ 304, 604, 1204 and 1354; and that all additional relief sought by Plaintiffs be, and hereby is, denied. This Memorandum Opinion and Order shall constitute findings of fact and conclusions of law.