Brenda DICKENSON, et al., Plaintiffs,

v.

Michael PETIT, Commissioner of Maine Department of Human Services, and Margaret Heckler, Secretary of Health and Human Services, Defendants.

Civ. A. No. 82–0041–B.

United States District Court,
D. Maine.

Aug. 16, 1983.

---

Kathleen Caldwell, Solomon Goldman, Hugh Calkins, Pine Tree Legal Assistance, Inc., Bangor, Me., Robert Mittel, Portland, Me., for plaintiffs.

James Smith, Katherine Greason, Asst. Attys. Gen., Augusta, Me., William H. Browder, Jr., Asst. U.S. Atty., Bangor, Me., Joyce Elise McCourt, U.S. Dept. of Health & Human Services, Boston, Mass., for defendants.

## MEMORANDUM DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

CYR, Chief Judge.

The issue on these cross-motions for summary judgment[1] is whether "income," as used in subsection 402(a)(7) of the Social Security Act, 42 U.S.C. § 602(a)(7), means income net of tax withholdings or gross income. Courts across the country are in sharp disagreement on the issue.[2]

The relevant facts are set forth in an earlier decision denying plaintiffs' motion for preliminary injunctive relief, see *Dickenson v. Petit*, 536 F.Supp. 1100, 1102–08 (D.Me.1982). For the reasons stated there, *id.* at 1109–15, and elaborated upon below, summary judgment must be granted for defendants.

## I. PLAIN LANGUAGE OF STATUTE

As originally enacted in 1939, subsection 402(a)(7) of the Social Security Act stated that:

> [a] state plan for aid and services to needy families must
>
> . . . .
>
> (7) provide that the state agency shall, in determining need, take into consideration any other income and resources of any child claiming aid to dependent children;
>
> . . .

Social Security Act Amendments of 1939, Pub.L. No. 76–379, § 401(b), 53 Stat. 1360, 1379–80 (1939). Congress amended subsection 402(a)(7) in 1962 to read as follows:

> (7) provide that the State agency shall, in determining need, take into consideration any other income and resources of any child *or relative* claiming aid to *families with* dependent children, *as well as any expenses reasonably attributable to the earning of any such income; except that, in making such determination, the State agency may, subject to limitations prescribed by the Secretary, permit all or any portion of the earned or other income to be set aside for future identifiable needs of a dependent child.*

---

1. Plaintiffs also move for the voluntary dismissal of counts two and three. *See* Motion to Dismiss filed February 16, 1983. At the hearing on the cross-motions for summary judgment, plaintiffs orally moved for the voluntary dismissal of count one. The Court grants these motions, subject to the receipt of a sufficient affidavit attesting that adequate notice of the proposed dismissals has been provided to the members of the subclasses certified in this action. *See* Fed.R.Civ.P. 23(e); *Simer v. Rios*, 661 F.2d 655, 665, 663–67 (7th Cir.1981); *McArthur v. Southern Airways, Inc.*, 556 F.2d 298, 301–04 (5th Cir.1977); *Muntz v. Ohio Screw Products*, 61 F.R.D. 396, 398–99 (N.D. Ohio 1973). The notice may be given by publication and must inform each class member of the reasons for, and consequences of, dismissal, as well as each member's right to intervene and object. Entry of a final judgment as to count four will not await receipt of this notice, there being no just reason for delaying any appeal of that judgment. *See* Fed.R.Civ.P. 54(b).

2. As of this writing, one circuit court has ruled on this issue. *See Turner v. Prod*, 707 F.2d 1109 (9th Cir.1983) (holding that "income" does not include mandatory payroll withholdings). Eight district courts have divided evenly on either preliminary or final rulings; four having ruled that "income" includes withholdings, *Gaston v. Schweiker*, No. 82–1337 (N.D.Ohio March 1, 1983); *Bell v. Hettleman*, 558 F.Supp. 386 (D.Md.1983), *appeal docketed sub. nom. Bell v. Massinga*, No. 83–1227 (4th Cir. March 15, 1983); *James v. O'Bannon*, 557 F.Supp. 631 (E.D.Pa.1982), *appeal docketed*, No. 82–1438 (3d Cir. July 21, 1982); *Dickenson v. Petit*, 536 F.Supp. 1100 (D.Me.1982), *aff'd on other grounds*, 692 F.2d 177 (1st Cir.1982); and four holding that withholdings are not part of "income," *RAM v. Blum*, 564 F.Supp. 634 (S.D.N.Y.1983); *Williamson v. Gibbs*, 562 F.Supp. 687 (W.D.Wash.1983), *appeal docketed*, No. 83–3725 (9th Cir. April 7, 1983); *Nishimoto v. Sunn*, 561 F.Supp. 692 (D.Hawaii 1983), *appeal docketed*, No. 83–1830 (9th Cir. April 4, 1983); *Turner v. Woods*, 559 F.Supp. 603 (N.D.Cal. 1982), *aff'd*, 707 F.2d 1109 (9th Cir.1983).

Public Welfare Amendments of 1962, Pub.L. 87–543, § 106(b), 76 Stat. 172, 188 (1962) (emphasis supplied to language added by 1962 amendment). Again in 1968 Congress amended subsection 402(a)(7) to read as follows:

(7) *except as may be otherwise provided in clause (8)*, provide that the State agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children, *or of any other individual (living in the same home as such child and relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid,* as well as any expenses reasonably attributable to the earning of any such income;

Social Security Amendments of 1967, Pub.L. 90–248, § 202(b), 81 Stat. 821, 881 (1968) (emphasis supplied to language added by 1968 amendment). The 1968 legislation added a new [3] subsection 402(a)(8), requiring state plans to:

(8) provide that, in making the determination under clause (7), the State agency—

(A) shall with respect to any month *disregard*—

(i) all of the earned income of each dependent child receiving aid to families with dependent children who is (as determined by the State in accordance with standards prescribed by the Secretary) a full-time student or part-time student who is not a full-time employee attending a school, college, or university, or a course of vocational or technical training designed to fit him for gainful employment, and

(ii) in the case of earned income of a dependent child not included under clause (i), a relative receiving such aid, and any other individual (living in the same home as such relative and child) whose needs are taken into account in making such determination, *the first*

*$30 of the total of such earned income for such month plus one-third of the remainder of such income for such month;* and

(B)(i) may, subject to the limitations prescribed by the Secretary, permit all or any portion of the earned or other income to be set aside for future identifiable needs of a dependent child, and (ii) may, before disregarding the amounts referred to in subparagraph (A) and clause (i) of this subparagraph, disregard not more than $5 per month of *any income;*

*Id.* at 881–82 (emphasis added). Most recently, the Omnibus Budget Reconciliation Act of 1981 (OBRA) amended subsection 402(a)(7) to read as follows:

(7) except as may be otherwise provided in paragraph (8) or (31), provide that the State agency—

(A) shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children, or of any other individual (living in the same home as such child and relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid;

(B) shall determine ineligible for aid any family the combined value of whose resources (reduced by any obligations or debts with respect to such resources) exceeds $1,000 or such lower amount as the State may determine, but not including as a resource for purposes of this subparagraph a home owned and occupied by such child, relative, or other individual and so much of the family member's ownership interest in one automobile as does not exceed such amount as the Secretary may prescribe;

Omnibus Budget Reconciliation Act of 1981, Pub.L. 97–35, Title XXIII, § 2301, 95 Stat. 357, 844–45 (1981). At the same time, Con-

---

**3.** With the 1968 amendments, original clauses (8) through (13) of subsection 402(a) were redesignated as clauses (9) through (14). *See*

Pub.L. 90–248, § 202(a), 81 Stat. 821, 881 (1968).

gress amended subsection 402(a)(8) to read as follows:

(8)(A) provide that, with respect to any month, in making the determination under paragraph (7), the State agency—

(i) shall disregard *all of the earned income of* each dependent child receiving aid to families with dependent children who is (as determined by the State in accordance with standards prescribed by the Secretary) *a full-time student* or a part-time student who is not a full-time employee attending a school, college, or university, or a course of vocational or technical training designed to fit him for gainful employment;

(ii) shall disregard from the earned income of any child or relative applying for or receiving aid to families with dependent children, or of any other individual (living in the same home as such relative and child) whose needs are taken into account in making such determination, *the first $75 of the total of such earned income for such month* (or such lesser amount as the Secretary may prescribe in the case of an individual not engaged in full-time employment or not employed throughout the month);

(iii) shall disregard from the earned income of any child, relative, or other individual specified in clause (ii), *an amount equal to expenditures for care in such month for a dependent child,* or an incapacitated individual living in the same home as the dependent child, receiving aid to families with dependent children and requiring such care for such month, *to the extent that such amount* (for each such dependent child or incapacitated individual) *does not exceed $160* (or such lesser amount as the Secretary may prescribe in the case of an individual not engaged in full-time employment or not employed throughout the month); and

(iv) shall disregard from the earned income of any child or relative receiving aid to families with dependent children, or of any other individual (living

in the same home as such relative and child) whose needs are taken into account in making such determination, *an amount equal to the first $30 of the total of such earned income not already disregarded* under the preceding provisions of this paragraph *plus one-third of the remainder* thereof (but excluding, for purposes of this subparagraph, earned income derived from participation on a project maintained under the programs established by section 432(b)(2) and (3)); and

(B) provide that (with respect to any month) the State agency—

. . . .

(ii)(I) *shall not disregard, under subparagraph (A)(iv),* any earned income of any of the persons specified in subparagraph (A)(ii), *if,* with respect to such month, *the income of the persons so specified was in excess of their need,* as determined by the State agency pursuant to paragraph (7) (*without regard to subparagraph (A)(iv)* of this paragraph), *unless,* the persons received aid under the plan in one or more of the four months preceding such month and subparagraph *(A)(iv) has not already been applied to their income for four consecutive months* while they were receiving aid under the plan; and

(II) *in the case of the earned income of a person with respect to whom subparagraph (A)(iv) has been applied for four consecutive months, shall not apply the provisions of subparagraph (A)(iv)* for so long as he continues to receive aid under the plan and shall not apply such provisions to any month thereafter until the expiration of an additional period of twelve consecutive months during which he is not a recipient of such aid;

*Id.* at 843–44 (emphasis added).

The plain meaning of subsections 402(a)(7) and (8), read together for present purposes, is that in determining need the states are to consider all income and resources *except:* (1) the first $75 of monthly

earned income; (2) any earned income expended for child care (up to $160 monthly); and (3) (for the first four months during which aid is received) an additional $30 of earned income, plus one-third of the earned income not disregarded under other provisions.[4]

"Earned income" is defined as the income realized "through the receipt of wages, salary, commissions or profit." 45 C.F.R. § 233.20(a)(6)(iii) (1982). With respect to wages, salaries or commissions, " 'earned income' means the total amount, irrespective of personal expenses such as income-tax deductions, lunches and transportation to and from work and irrespective of [non-personal] expenses of employment . . . , such as the cost of tools, materials, special uniforms, or transportation to call on customers." 45 C.F.R. § 233.20(a)(6)(iv) (1982). Thus, after disregarding certain amounts from total earned income and adding the difference to other (unearned) income, *see id.* at (a)(6)(vi) (1982), the income figure arrived at is used to calculate need.

Plaintiffs do not challenge this definition of "earned income," but insist that the need calculation should begin with income (net of withholdings) and then be reduced by the amount of income (inclusive of withholdings) which subsections 402(a)(8)(A)(i) through (iv) direct the state agency to disregard. Plaintiffs contend that the concept of "earned income" was introduced into the AFDC statutes in 1968 so as to permit applicants or recipients to maximize the "$30 plus ⅓" disregard, and that

[t]his goal was in part accomplished by statutorily using the term "earned income" and then regulatorily defining that term in as all-inclusive a fashion as possible, so that when the monthly $30 plus one-third disregard was calculated, as small an amount as possible was available for subtraction from the standard of need.

*Turner v. Prod,* 707 F.2d 1109, 1117 (9th Cir.1983).

Apart from the fact that plaintiffs' formula for calculating need implicates an exceedingly cumbersome definition of gross income for purposes of subsection 402(a)(8), the Court can find no statutory language or legislative history which would indicate that the term "earned income," as used in subsection 402(a)(8), was intended by Congress to be read more broadly than the more general term "income" used in subsection 402(a)(7).[5] Considering the readily apparent meaning of "earned income" in common parlance, i.e., as a subset of the more general term "income" [which includes other forms of income, i.e., unearned income such as dividends, interest, pensions and benefits, *see* 45 C.F.R. § 233.20(a)(6)(vi) (1982) ], the Court rejects the proposed need calculation formula as contrary to the plain meaning of the AFDC statutes and regulations. The term "earned income" was used to identify a subset of "income" in AFDC statutes and regulations long before the congressional adoption of the percentage "work incentive disregard." *See* 76 Stat. 172, 188 (1962) (states authorized to permit portions of "earned or other income" to be

---

**4.** Subsection 402(a)(8)(A)(i) provides an additional disregard which is applicable to the earned income of dependent children who are students.

**5.** The only authority cited by courts accepting the view that the term "earned income" was intended to include elements not coming within the meaning of the term "income" is *Connecticut State Department of Public Welfare v. H.E.W.,* 448 F.2d 209 (2d Cir.1971). Although this case supports the obvious proposition that the 1968 amendment was intended as an employment incentive, *id.* at 214, and the proposition that the percentage calculation under subsection 402(a)(8) was to be made prior to deduction of work expenses under subsection

402(a)(7) (including, by the way, "expenses such as income-tax deductions," *id.* at 216), the case in no way intimates that "earned income" was intended to have a broader meaning than "income." The Second Circuit, *see* 448 F.2d at 216, and the Ninth Circuit, in *Arizona Department of Public Welfare v. Department of Health, Education & Welfare,* 449 F.2d 456, 469 (9th Cir.1971), held it a reasonable administrative requirement that the "$30 plus ⅓" disregard be based on and deducted from gross earned income, followed by deduction of all work expenses. Neither court suggested, as do these plaintiffs, that the earned income disregard of subsection 402(a)(8) was to be deducted from *net* income.

set aside for future needs); *Social Security Administration Letter to States on A.D.C. —Conservation of Income for Current and Future Identifiable Needs,* State Letter No. 573 (June 21, 1962), Exhibit B(2) of Defendant Heckler's Response to Interrogatories (earned income contrasted with "income from any source"); *Social Security Administration Letter to States—Need—Specific Applications—Income and Resources,* State Letter No. 291 (March 11, 1957) ("earned income" of children discussed as portion of "all income regardless of source").

## II. CONGRESSIONAL INTENT

Central to the present inquiry is whether the OBRA Congress contemplated that the flat "$75 work-expense disregard" would replace the "open-ended" disregard, not only as applied to work expenses, such as union dues, transportation costs, clothing, special training costs and lunches, but also *as applied to withholding taxes.* All available legislative history suggests that Congress did so intend.

A report of the Senate Finance Committee described pre-OBRA law as requiring states "to disregard from the recipient's *total* income: (1) the first $30 earned monthly, plus one-third of additional earnings; and (2) any expenses (including child care) reasonably attributable to the earning of such income...." S.Rep. No. 139, 97th Cong., 1st Sess., at 501 (1981); 1981 U.S. Code Cong. & Ad.News 767 (emphasis added). This report evidences the understanding of the Senate Finance Committee that it was altering a law which deducted work expenses from *total* income; no reference is made to a separate deduction for withholding taxes.

The testimony of Secretary Schweiker before the House Ways and Means Committee tacitly supports the view that withholdings were "standardized," together with expenses for transportation, uniforms, union dues etc. After noting the Reagan Administration's objectives of limiting AFDC eligibility to those most in need and of correcting the "generous disregards" which had in the past permitted full-time workers to receive assistance, the Secretary stated:

> We propose to change the earned-income disregard. To determine the basic eligibility for the AFDC program, we would deduct from an applicant's monthly earnings $75 for work expenses and no more than $50 per child for child care for those found eligible. We would then, in calculating the benefit amount, deduct an additional $30 and one-third of the remainder of the earnings.

> The new formula will reduce or eliminate benefits to those at higher levels. This change standardizes work and child-care expenses. Also, the $30 and one-third now disregarded as a work incentive will be computed on net income, rather than gross as is presently done, and will not apply to earnings already disregarded for work expenses and child care.

*Administration's Proposed Savings in Unemployment Compensation, Public Assistance, and Social Services Programs: Hearings Before the Subcomm. on Public Assistance and Unemployment Compensation of the House Comm. on Ways and Means,* 97th Cong., 1st Sess., at 6–7 (1981). Again, no reference is made to any computation based on earnings net of withholdings. All calculations, according to the Secretary, begin with the applicant's "monthly earnings."

The legislative history of OBRA casts serious doubt on another argument advanced by plaintiffs, viz., that if Congress had intended so drastic a work disincentive as arises from treating withholdings as "income," the legislative history would more clearly reflect such an intent. *See* Plaintiff's Memorandum filed February 11, 1983, at 14–16. Prior to the enactment of OBRA there was considerable testimony before Congress highlighting the work disincentives of the OBRA amendments. A speaker on behalf of the National Anti-Hunger Coalition emphasized the unrealistic nature of the proposal to limit to a flat $75 the disregard for taxes, transportation and uniforms, stating:

In place of the current system, which encourages AFDC women to take low paying jobs by recognizing that even those jobs involve costs, the Reagan Administration proposes to operate AFDC in a world which does not exist, that is, a world in which full time day care can be purchased for $50 a month, and *in which the combination of Social Security and FICA taxes, transportation, and uniforms or other mandatory payroll deductions will never exceed $75 a month.* Any working AFDC mother whose work-related expenses exceed those amounts will either have to absorb the costs out of minimum wage or lower earnings, or will have to quit working. . . .

*Administration's Proposed Savings in Unemployment Compensation, Public Assistance, and Social Services Programs: Hearings Before the Subcomm. on Public Assistance and Unemployment Compensation of the House Comm. on Ways and Means,* 97th Cong., 1st Sess., at 88–89 (1981) (statement of Christine Pratt-Marston) (emphasis added). The president of the Children's Defense Fund gave similar testimony before the Senate Finance Committee, *see Spending Reduction Proposals, Hearings Before Senate Comm. on Finance,* Pt. 1, 97th Cong., 1st Sess., at 227 (1981) (statement of Marian Wright Edelman) [cap "of $75 per month for work expenses (tax, transportation, uniforms, supplies etc.) . . . [does] not reflect the real costs of working"], and before the House Committee on the Budget, *see Budget Issues For Fiscal Year 1982: Hearings Before the Comm. on the Budget, House of Representatives,* Vol. 1, 97th Cong., 1st Sess., at 419–20 (1981) (statement of Marian Wright Edelman) [current method of calculating eligibility and grant level, which permits deduction of "all actual work-related expenses (such as transportation, child care, supplies, and taxes)" would be changed to set "a standard maximum deduction for these costs"]. In addressing similar concerns about OBRA's work disincentives before the Senate Finance Committee, the Secretary responded:

Anyone receiving AFDC benefits who voluntarily leaves a Win job without good cause can be subject to sanctions and removal from the grant if he/she refuses to participate. The same sanctions will apply to persons refusing to participate in CWEP. Further, in the 33 States that provide medicaid to individuals not eligible for a federal cash assistance program, AFDC ineligibility does not automatically result in medicaid ineligibility.

*Spending Reduction Proposals, Hearings Before the Comm. on Finance, United States Senate,* Pt. 1, 97th Cong., 1st Sess., at 10 (1981) (testimony of Hon. Richard S. Schweiker).

Although these interpretations of the AFDC statutes are of no more than marginal significance in determining the meaning of "income" as used in subsection 402(a)(7), they seriously erode the foundation for plaintiff's contention that, in adopting OBRA's approach to the standardization of work expenses, Congress never contemplated or intended the work disincentive which results from considering payroll withholdings as "work expenses." *See Piper v. Chris-Craft Industries,* 430 U.S. 1, 26–37, 97 S.Ct. 926, 941–947, 51 L.Ed.2d 124 (1977) (considering hearing testimony of numerous individuals in construing section of Securities Exchange Act of 1934); *Federal Energy Administration v. Algonquin SNG, Inc.,* 426 U.S. 548, 96 S.Ct. 2295, 49 L.Ed.2d 49 (1976) (considering hearing testimony regarding impact of imports on domestic industries in construing Trade Expansion Act of 1962).

Congressional action since the enactment of OBRA further substantiates its intendment that the $75 standardized work-expense disregard represents the entire adjustment to be made for all work expenses, *including payroll withholdings.* In the course of its consideration of a bill to restore to AFDC the work incentives supposedly removed by OBRA, the House Ways and Means Committee noted that under pre-OBRA law

[t]here was no statutory limit on the amount of *gross income* a family could have and still remain on AFDC. In determining eligibility and benefits, the

earned income disregards summarized above were applied.

Recipients became ineligible for benefits at the point their "countable income" (*gross income minus the disregards*) equaled the State maximum AFDC benefit amount.

H.R.Rep. No. 97–587, Pt. 1, 97th Cong., 2nd Sess., at 6 (1982) (emphasis added). The same report goes on to state:

Prior to Federal amendments enacted in the 1960's, if an AFDC parent took a job, the family's AFDC benefits were reduced dollar-for-dollar by the amount of any earnings. In other words, there was no net financial gain from working. Furthermore, *any work-related expenses—such as transportation and child day care costs, and mandatory tax and other wage deductions*—could result in the family actually having less net or disposable income than if the parent did not work. In order to insure that taking a job would increase an AFDC family's disposable income, Federal amendments enacted in 1962 and 1967 required States to apply certain procedures (i.e., earnings disregards) in determining the monthly benefit level of an eligible AFDC family in which a member was employed. These amendments required that certain amounts of earnings not be counted against, or reduce the family's monthly AFDC benefit. That is, certain amounts of monthly earnings had to be disregarded in determining the AFDC payment so the family would have a higher amount of disposable income (wages minus work expenses plus AFDC benefits) because of the earnings; and, therefore, there would be a positive financial incentive for AFDC parents to seek employment.

*Prior to* enactment of the *Omnibus Budget Reconciliation Act* of 1981 (P.L. 97–35), in determining a working AFDC family's benefit level for a month, *States were required to reduce the State monthly payment by the amount of the family's earnings that remained after* the following amounts had been excluded or disregarded: (1) *the first $30 of earnings;* (2) *plus one-third of* remaining earnings; (3)

*plus work expenses* for the month (any expenses, including child day care, reasonably attributable to the earning of income). (The $30 plus one-third disregards could be applied in determining the monthly benefit only if the family was determined to be eligible for AFDC without the application of these disregards).

*Id.* at 12 (emphasis added). Thus, the same House Committee which had considered the OBRA amendments to the AFDC laws in 1981 indicated in 1982 its understanding that wage deductions were work-related expenses and that prior to OBRA all such work expenses had been disregarded from the "family's earnings." There is no intimation of an "up front" exclusion of withholding taxes under any administratively- or judicially-prescribed "availability" doctrine.

### III.  HISTORICAL TREATMENT OF WITHHOLDINGS

In support of their proposed interpretation of subsection 402(a)(7), plaintiffs rely on various administrative rulings and on the administrative treatment accorded payroll withholdings during the early years of the AFDC program. A report of the Department of Health, Education and Welfare, the predecessor of HHS, published in March, 1961, stated that, during the period *May through June, 1959,* all states disregarded "payroll deductions for union dues, income tax, retirement and other such items" and that all states considered "gross income" to mean "take home" pay *after* the deduction of these items, *see Bureau of Public Assistance, Social Security Administration, U.S. Department of Health, Education and Welfare,* State Methods for Determining Need, Report No. 43 (March, 1961) at 24–26 (attached as Appendix D to plaintiff's memorandum filed February 11, 1983). Yet this report does not support plaintiffs' argument that the prevailing state practice was *required* by federal law, either statutory or regulatory. Certainly it does not appear that the relevant legislative history compelled or even warranted such an interpretation, *since mandatory payroll*

deductions for income tax did not even come into existence until 1943—four years after the enactment of subsection 402(a)(7). See Current Tax Payment Act of 1943, Pub.L. 78–68, 57 Stat. 126 (1943). See also Turner v. Prod, 707 F.2d at 1114–15; Bell v. Hettleman, 558 F.Supp. 386, 391 n. 7 (D.Md. 1983); James v. O'Bannon, 557 F.Supp. 631, 638 (E.D.Pa.1982). Instead, it appears that the pre-1962 administrative practice prevailing among the states was the result of administrative efforts to minimize a perceived work disincentive, rather than the consequence of federal legislative or administrative requirements. See Historical Summary of Expenses Related to Employment, Attachment III(A) to Defendant Schweiker's Memorandum filed March 11, 1983; Bureau of Public Assistance Letter Regarding Facilitating Employment of Assistance Recipients Through Means of Sound Determination of Need, (April 30, 1942), Attachment I to Defendant's Schweiker's Memorandum, id. See also Turner v. Prod, 707 F.2d at 1117–18 (between 1939 and 1962, Social Security Board "urged, but did not require," allowances for work-related expenses).

With the introduction in 1962 of the statutory requirement that "expenses reasonably attributable to the earning of income" be considered, there was no longer a need for the states artificially to categorize withholdings and other expenses as unavailable income. Thus, the administrative history after 1962, largely ignored in plaintiffs' briefs, demonstrates that payroll withholdings were treated as work-related expenses.

Although an HEW Handbook published in 1964 failed to cite payroll withholdings among other items which might be included within a state's list of work expenses, see

6. See also Turner v. Prod, 707 F.2d at 1120; RAM v. Blum, 564 F.Supp. 634, 642 (S.D.N.Y. 1983). Exhibit B, attached to defendant Heckler's Response to Plaintiff's Interrogatories (filed October 8, 1982), recites similar HEW Handbook amendments adopted December 8, 1961, June 21, 1962, and February 27, 1963.

7. This summary and an analysis also appear in defendant Heckler's Memorandum, Attachments III(B) & (C).

H.E.W. Handbook of Public Assistance Administration, H.T. No. 22, Part IV, § 3140(1) (April 22, 1964),[6] (attached to Amended Complaint as Appendix O), by 1972 all states had begun recognizing taxes withheld from income as work-related expenses, see H.E.W. Summary of State Agency Policy on Expenses Reasonably Attributable to the Earning of Income-AFDC (January, 1972), "Attachment C" to defendant Petit's Memorandum filed February 24, 1983.[7] See also Bell v. Hettleman, 558 F.Supp. at 392 n. 8 (citing the 1972 report and a 1978 Social Security Administration report to the Senate Finance Committee, concluding that "[a]ll states consider State, Federal and Social Security taxes as expenses of employment"). This widespread administrative treatment of payroll withholdings "as employment related expenses" was alluded to in 1974 by Mr. Justice Powell in Shea v. Vialpando, 416 U.S. 251, 254–55, 94 S.Ct. 1746, 1750–51, 40 L.Ed.2d 120 (1974).[8] See also Connecticut State Department of Public Welfare v. Department of H.E.W., 448 F.2d 209, 216 (2d Cir.1971) (upholding as reasonable a regulation defining "expenses reasonably attributable to the earning of income" as including "personal expenses such as income tax deductions, lunches" etc. and non-personal employment expenses).

## IV. SUGGESTED CONFLICT WITH "AVAILABILITY" REGULATION

Struggling against the plain language of the statute, its legislative history and the relevant administrative treatment of withholdings, plaintiffs further contend that a long-standing regulation (that states are to consider only actually available income[9])

8. The Supreme Court dicta in Shea v. Vialpando, 416 U.S. 251, 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974), supporting defendants' position, was discussed in this Court's earlier decision. See Dickenson v. Petit, 536 F.Supp. at 1110–1114.

9. 45 CFR § 233.20(a)(3)(ii) (1982) provides in pertinent part that "in determining need and the amount of the assistance payment, after all policies governing the reserves and allowances and disregard or setting aside of income and resources referred to in this section have been

precludes the consideration of tax withholdings in calculating need, since tax withholdings are *not actually available.* As the Court has already pointed out, *see Dickenson v. Petit,* 536 F.Supp. at 1115–16 n. 12, the "availability" regulation was promulgated to preclude states from presuming or assuming the existence of resources or income sources, rather than to narrow the definition of "income" with respect to actual income sources. *See also James v. O'Bannon,* 557 F.Supp. at 638 (intended to preclude states from establishing fictionalized or attributive sources of income or resources). In this connection, plaintiffs offer no rational basis for distinguishing between the unavailability of tax withholdings and the unavailability of other work-related expenses, such as union dues, transportation expenses, child care expenses. Nor do they suggest how regulations as detailed as those dealing with AFDC need calculations could reasonably be thought to have overlooked any mention of payroll withholdings. *See James v. O'Bannon,* 557 F.Supp. at 640.

## V. CONCLUSION

For all of the foregoing reasons, the defendants' motions for summary judgment are hereby GRANTED and the Clerk is directed to enter judgment for the defendants on Count Four of the Complaint.

*uniformly applied:* ... (D) *Net income* ... *and resources available for current use shall be considered;* income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance." (emphasis added). *See* *also 1940 Social Security Board Policy Statement,* Appendix J. to Amended Complaint. The provision requiring that the states consider "net income" has reference to the net income available after the proper application of the policies regarding reserves, allowances and disregards. *See Dickenson v. Petit,* 536 F.Supp. at 1111 n. 8.