**Paula CLARK, Sandra Curran, Donna Sargent, on behalf of themselves and all other persons similarly situated**

v.

**Edgar J. HELMS, Jr., in his capacity as Commissioner, New Hampshire Department of Health and Welfare, Richard Chevrefils, in his capacity as Director of the New Hampshire Division of Welfare.**

**Civ. No. 83–9–D.**

United States District Court,
D. New Hampshire.

Dec. 9, 1983.

Michael A. Fuerst, NH Legal Assistance, Claremont, N.H., Deborah Dickinson, NH Legal Assistance, Concord, N.H., for plaintiff.

1. 42 U.S.C. § 601, *et seq.*

2. 28 U.S.C. §§ 2201, 2202.

3. Summary judgment is proper when, viewing the record in the light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R. Civ.P.; *Early v. Eastern Transfer,* 699 F.2d 552, 554–55 (1st Cir.1983). The parties have filed stipulated facts.

4. This is a road well traveled. Numerous courts have reported on this issue. Some courts have ruled for plaintiffs. *Turner v. Woods,* 559 F.Supp. 603 (N.D.Cal.1982), *aff'd Turner v. Prod,* 707 F.2d 1109 (9th Cir.1983); *Kelly v. Perales,*

Douglas L. Patch, Asst. Atty. Gen., Concord, N.H., for defendant.

OPINION

DEVINE, Chief Judge.

Plaintiff class brings this action and attacks the method used by defendant to calculate Aid to Families with Dependent Children ("AFDC")[1] benefits. Plaintiffs also attack defendants' alleged failure to adequately notify AFDC recipients of cases involving intended actions to terminate or reduce benefits. Plaintiffs seek injunctive and declaratory relief.[2] Plaintiffs found jurisdiction upon 28 U.S.C. §§ 1331 and 1343(3). Both parties move for summary judgment regarding the calculation of AFDC benefits.[3] The motions do not address plaintiffs' complaint of inadequate notice. In light of the exhaustive and instructive treatment given this difficult matter by both parties and other courts,[4] the Court proceeds forthwith.

*Background*

The AFDC program is designed to provide financial assistance to needy dependent children and the parents or relatives who live with and care for them. A principal purpose of the program, as indicated by 42 U.S.C. § 601, is to help such parents and relatives 'to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection....' The program 'is based on a scheme of cooperative federalism,' *King v. Smith,* 392 U.S.

566 F.Supp. 785 (S.D.N.Y.1983); *RAM v. Blum,* 533 F.Supp. 933 (S.D.N.Y.1982), *permanent injunction granted,* 564 F.Supp. 634 (1983); *Williamson v. Gibbs,* 562 F.Supp. 687 (W.D.Wash. 1983), *app. docketed,* No. 83–3725 (9th Cir. Apr. 7, 1983); *Nishimoto v. Sunn,* 561 F.Supp. 692 (D.Hawaii 1983). Other courts have ruled for defendants. *Dickenson v. Petit,* 536 F.Supp. 1100 (D.Me.), *aff'd on other grounds,* 692 F.2d 177 (1st Cir.1982); *James v. O'Bannon,* 557 F.Supp. 631 (E.D.Pa.), *aff'd,* 715 F.2d 794 (3d Cir.1983); *Bell v. Hettleman,* 558 F.Supp. 386 (D.Md.1983), *aff'd Bell v. Massinga,* 721 F.2d 131 (4th Cir.1983). One court has ruled for defendants in an unreported case. *Gaston v. Schweiker,* No. 82–1337 (N.D.Ohio Mar. 1, 1983). A comparison of *Turner* and *James* largely sets forth the disparate views herein.

309, 316, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1968). It is financed in large measure by the Federal Government on a matching-fund basis, and participating States must submit AFDC plans in conformity with the Act and the regulations promulgated there under by the Department of Health, Education, and Welfare (HEW). The program is, however, administered by the States, which are given broad discretion in determining both the standard of need and the level of benefits.

*Shea v. Vialpando,* 416 U.S. 251, 253, 94 S.Ct. 1746, 1750, 40 L.Ed.2d 120 (1974); *see Dickenson, supra,* 692 F.2d 177; *Drysdale v. Spirito,* 689 F.2d 252 (1st Cir.1982).[5]

Since the original enactment of the AFDC program in 1935, as Title IV of the Social Security Act, Pub.L. No. 74–271, 49 Stat. 620 (1935), participant states have been required to establish a minimum dollar amount considered necessary to provide for the essential needs of an AFDC recipient family of any given size. Prior to 1939, each recipient family received benefits equal to this entire 'standard of need,' regardless of whether or not the family derived income from non-AFDC sources. This failure to consider outside income created the possibility that a recipient family with an employed member could realize an income in excess of its state's standard of need. Congress eliminated this possibility in 1939 by enacting section 402(a)(7) of the Social Security Act, which provided, as it still does, that 'the State agency shall, in determining need, take into consideration any [non-AFDC] income and resources of any child claiming [AFDC].' *See Social*

Security Act Amendments of 1939 § 401(b), Pub.L. No. 76–379, 53 Stat. 1360, 1379–80 (1939).

*RAM, supra,* 564 F.Supp. at 638. The amendment assured that no Little Orphan Annie would receive public assistance if she had a Daddy Warbucks. *Drysdale v. Spirito, supra,* 689 F.2d at 257; *Dickenson, supra,* 536 F.Supp. at 1112, n. 10. Courts disagree over the usefulness of the intent of the 76th Congress when it enacted the 1939 amendment. *Compare Turner, supra,* 707 F.2d at 1114–15; *RAM, supra,* 564 F.Supp. at 638–40, 645 (useful), *with Dickenson, supra,* 536 F.Supp. at 1115 (not helpful).

The amount of an AFDC family's monthly grant is intended to be limited to the exact amount which the family needs. The statutes and the regulations attempt to accomplish this purpose by requiring that an applicant-family's eligibility be determined by a careful assessment of the family's income and resources and a comparison of the sum of money thus found to be available to it monthly with a dollar figure (known in AFDC parlance as 'the standard of need') that reflects the state's view of the amount necessary to provide for the essential needs such as food, clothing and shelter of a hypothetical family having the same composition as the family in question. If it is found that the family has less than the standard of need, its AFDC grant will be the amount necessary to close the gap.

*Turner, supra,* 707 F.2d at 1111.

Congress first required in 1962 that AFDC recipients be given full credit for

---

**5.** The relevance of *Shea* to the specific current issue is questionable. In properly attempting to construe the "whole" statute, 2A C.D. Sands, *Statutes and Statutory Construction, A Revision of the Third Edition of Sutherland on Statutory Construction* § 46.05 (4th ed. 1973) ("*Sutherland*"), courts have relied heavily upon *Shea* and have parsed its language to support defendant's position. *E.g., Bell, supra,* 558 F.Supp. at 393; *Dickenson, supra,* 536 F.Supp. at 1110–14. One court noted that if the *Shea* court began its calculation by defining the term "earned income" as an amount irrespective of personal expenses, such as income tax deductions, and if

"earned income", which includes tax withholdings is thus a subset of the more general category of "income", then, *a fortiori,* "income" in § 402(a)(7) includes tax withholdings. *Dickenson, supra,* 536 F.Supp. at 1111. This etymological dissection and lexicographical definition does not enhance the "whole statute" interpretation. *Sutherland, supra* at § 46.05. Consequently, the Court declines to attach significance to the lower courts' analyses of the treatment of mandatory payroll deductions in *Shea.* *See Turner, supra,* 707 F.2d at 1118 & n. 10; *RAM, supra,* 564 F.Supp. at 641, n. 17.

"work expenses". State agencies were instructed to disregard any expenses reasonably attributable to the earning of income in the calculations made for purposes of determining AFDC benefits. In 1967, Congress enacted a so-called "work incentive disregard" by which the first $30 of gross income earned plus the next one-third of gross income earned in each month were disregarded in the calculation of AFDC benefits. P.L. 90–248, 81 Stat. 821, 881 (1968). *Turner, supra,* 707 F.2d at 1118.

> Hypothetically, therefore, if the applicant earned $900, the first calculation to be made would be to subtract from that amount $330 (one-third of $900 plus $30), leaving a balance for further calculation of $570....
>
> The next deduction to be made under the statute ... was a work expense deduction or 'disregard.' That deduction (under *Shea*) would be a total of the personal expenditures incurred by the applicant for lunches, transportation, child care expenses, mandatory payroll deductions, and the like. Income tax withholdings were included in that total, so that, if income tax withholdings amounted to $25 and the other personal expenses, including child care, amounted to $125, a further deduction of $150 ($25 for withheld taxes, plus $60 for child care, plus $65 for transportation, lunches, and so forth) would be subtracted from the $570 previously noted. At that point in the calculation, $420 would remain to be measured against the state's standard of need. Assuming hypothetically that the state's standard of need was $500, the difference of $80 would be paid to the applicant as an AFDC grant.

*James, supra,* 715 F.2d at 797.

Congress amended AFDC as part of the Omnibus Budget Reconciliation Act of 1981, P.L. No. 97–35, 95 Stat. 357 ("OBRA").

> One change made was to permit a standard or uniform deduction for all work-related expenses. Congress ... eliminated the requirement that a state 'take into consideration ... any expenses reasonably attributable to the earning of ... income.' ... the statute ... made provision for a $75 work-expense deduction or 'disregard' against earned income or a lesser amount as the Secretary might prescribe where the applicant was only a part-time employee.
>
> In addition, for the first time, the statute expressly allowed child care expenses and provided that those expenses ... could be deducted as a separate 'disregard' up to a limit of $160. Lastly ... OBRA provided that the work incentive 'disregard' was to be applied, not as the first deduction from gross earned income, as it had previously been applied, but rather only after all of the other separate 'disregards' had given effect. This ... had the effect of reducing the ultimate AFDC grant to the beneficiary, because applying the one-third plus $30 work incentive 'disregard' to a sum which had been reduced by amounts for work expenses and child care obviously would result in a smaller work incentive disregard than would have resulted [had] the 'work incentive disregard' been computed on the basis of gross earned income.

*James, supra,* 715 F.2d at 797–98. Therefore, if the earlier hypothetical applicant who earned $900 had received an $80 grant, the applicant would now receive only $20 for the first four months, and no grant thereafter.

> The Social Security Act, as amended, now requires states to perform a three-step calculation in order to determine AFDC benefits. (1) Determine income amount. (2) Subtract $75 for work expenses from that amount. (3) Subtract the adjusted income amount derived from steps 1 and 2 from the dollar figure set in the state's calculation of level of need to determine the exact grant payment which will be made to the recipient....
>
> ... the parties disagree about the meaning of two key terms: 'income' and 'work expenses.' After the 1981 OBRA amendments which, *inter alia,* instituted the standardized $75 work expenses dis-

regard, 42 U.S.C. § 602(a)(8)(A)(ii), HHS instructed the state agencies that 'income' was to be construed as 'gross income' and that mandatory payroll deductions for such items as income tax, FICA and disability payments were properly characterized as 'work expenses' to be grouped with such expenses as transportation and uniform costs. This entire group of expenses would then be subject only to the standard $75 disregard, regardless of the actual amounts expended or withheld. The state of [New Hampshire] has embodied those HHS instructions in the regulations which are at issue in this case. Plaintiffs contend that 'income' means *net* income and thus mandatory payroll deductions are non-income items. Plaintiffs argue that the Social Security Act requires the agencies to deduct both the mandatory tax deductions [in determining income] and the $75 disregard amount [in subtracting] work expenses in [calculating] the size of the grant necessary to bring the recipient family up to the state's standard of need.

*Turner, supra,* 707 F.2d at 1112.

*The Law*

THE STATUTE:

... As originally passed in 1939, § 602(a)(7) read as follows:

A state plan for aid and services to needy families must ...

(7) provide that the State agency shall, in determining need, take into consideration any other income and resources of any child claiming aid to dependent children;

... In 1962, that section was amended as follows:

(7) provide that the State agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children, as well as any expenses reasonably attributable to the earning of any such income; ....

In 1968, ... § 602(a)(7) was further amended to link it with a revised 42 U.S.C. § 602(a)(8) which detailed disregards of earned income:

(7) except as may be otherwise provided in clause (8), provide that the State agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children, ... as well as any expenses reasonably attributable to the earning of any such income; (8) provide that, in making the determination under clause (7), the State agency—

(A) shall with respect to any month disregard—

(i) ...; (ii) in the case of earned income of a dependent child ... [or] a relative receiving such aid ... the first $30 of the total of such earned income for such month plus one-third of the remainder of such income for such month....

In 1981, OBRA amended §§ 602(a)(7) and 602(a)(8) to provide as follows:

(7) except as may be otherwise provided in paragraph (8) ... provide that the State agency—

(A) shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children....

\*     \*     \*     \*     \*     \*

(8)(A) provide that, with respect to any month, in making the determination under paragraph (7), the state agency—

(i) ...; (ii) shall disregard from the earned income of any child or relative applying for or receiving aid to families with dependent children ... the first $75 of the total of such earned income for such month (or such lesser amount as the Secretary may prescribe in the case of an individual not engaged in full-time employment or not employed throughout the month); (iii) shall disregard from the earned income of any child, [or] relative ... an amount equal to expenditures for care in such month for a dependent child

... receiving aid to families with dependent children and requiring such care for such month, to the extent that such amount (for each such dependent child ...) does not exceed $160 ....

*Turner, supra*, 707 F.2d at 1113.

Plaintiffs contend that § 602(a)(7) "income" is available income, i.e., net income, and therefore the mandatory tax deduction must still be disregarded by defendant. Defendant contends that § 602(a)(8) takes precedence over § 602(a)(7) and that taxes are work-related expenses subject to the $75 OBRA standardized deduction.

*Analysis*

Many courts have already delved into the traditional signposts for statutory construction—the language of the statute itself, and the legislative history and administrative interpretation of the statute. They have found that the language of § 602(a)(7) unfortunately is not helpful. *Turner, supra*, 707 F.2d at 1114; *James, supra*, 715 F.2d at 802.

■ The administrative interpretation of the statute, however, is enlightening. The interpretation of a statute by the agency charged with the administration of the statute is entitled to substantial deference by the Court. *United States v. Rutherford*, 442 U.S. 544, 553–54, 99 S.Ct. 2470, 2475–76, 61 L.Ed.2d 68 (1979); *Dickenson, supra*, 692 F.2d at 181. The Court faces a situation here, however, where two different regulations, one under § 602(a)(7) leading to plaintiff's "availability" argument, and the other under § 602(a)(8) characterizing income tax withholding as work-related expenses, arguably lead to two different treatments of the same item. *James, supra*, 715 F.2d at 804.

Plaintiffs' argument hinges on 45 C.F.R. § 233.20(a)(3)(ii)(D), 47 Fed.Reg. 5648, 5675 (Feb. 5, 1982), which states:

A State Plan for ... AFDC ... must ...
(3)(ii) Provide that, in determining need and the amount of the assistance payment, after all policies governing the reserves and disregard or setting aside of income and resources referred to in this section have been uniformly applied:

\* \* \* \* \* \*

(D) Net income available for current use and currently available resources shall be considered; income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance.

As early as 1967 there was a virtually identical regulation, and thus it is plain that the principle of "availability" is well rooted in § 602(a)(7). *James, supra*, 715 F.2d at 803; *Turner, supra*, 707 F.2d at 1114–16.

On the other hand, there is an historical and contrary interpretation under § 602(a)(8). In 1968 the Secretary of HEW published proposed regulations for various programs, including AFDC. 33 Fed.Reg. 10230 (July 17, 1968). A relevant change was made:

(1) The *method for disregard of earned income has been modified.* In arriving at the amount of earned income to be applied against the assistance budget *the amount to be disregarded is to be deducted from gross income rather than from net income. Next the amount allowed for work expense is to be deducted. The remaining amount is then applied against the assistance budget.* 34 Fed.Reg. 1394 (January 29, 1969) (underlining added).

*James, supra*, 715 F.2d at 803. The regulation that was finally adopted provided:

A State Plan for ... AFDC must ...
(6) Provide that for purposes of disregarding earned income the agency policies will include: (i) a definition of 'earned income' in accordance with the provisions of subdivisions (iii) through (viii) of this subparagraph:

\* \* \* \* \* \*

(iv) With reference to commissions, wages, or salary, the term 'earned income' means the total amount, irre-

*spective of personal expenses, such as income-tax deductions, lunches, and transportation to and from work, and irrespective of expenses of employment which are not personal, such as the cost of tools, materials, special uniforms, or transportation to call on customers.*

45 C.F.R. § 233.20(a)(6)(iv) (1969) (underlining added).

A State Plan for ... AFDC must ...

(7) *Disregard of earned income; method*

(i) Provide that the following method will be used for disregarding earned income: The applicable amounts of earned income to be disregarded will be deducted from the gross amount of 'earned income,' and work expenses, personal and nonpersonal, will then be deducted. Only the net amount remaining will be applied in determining need and the amount of the assistance payment.

45 C.F.R. § 233.20(a)(7)(i) (1969).

*James, supra,* 715 F.2d at 804. These regulations have remained the same even after the post-OBRA regulations were published. *Id.* So at least since 1969, taxes withheld arguably have not been seen as conceptually distinct from work expenses. *James, supra,* 715 F.2d at 807.

Defendant's reliance on § 602(a)(8) is questionable. Prior to the enactment of OBRA, § 602(a)(8) dealt only with the old work incentive disregards which required additional deductions from household income and did not deal in any way with disregards of work expenses or offsets for mandatory tax withholdings. In other words, before 1981 § 602(a)(8) did not act in any way as a substitution for or limitation on § 602(a)(7). *Turner, supra,* 707 F.2d at 1116. Thus, even if § 233.-20(a)(6)(iv) conflicts with the longstanding availability principle of § 233.20(a)(3)(ii)(D), it is only the latter regulation that construes the statutory section here at issue. *RAM, supra,* 564 F.Supp. at 648, n. 32. That regulation clearly adopts an availability principle. This practice of treating in-

come for purposes of determining need as net income has received tacit legislative approval since Congress has not availed itself of the opportunity to amend the language even though it has altered this section at least three times—in 1962, 1967, and 1981. *Turner, supra,* 707 F.2d at 1116.

█ Congressional purpose also may be dispositive of an issue of statutory construction. *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979); *Philbrook v. Glodgett,* 421 U.S. 707, 713–14, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975). In this instance there are two acts: AFDC and OBRA. Emphasis on OBRA ostensibly supports defendant's position.

The primary purpose of the OBRA amendments to the AFDC program is to reduce or eliminate welfare benefits for those considered by Congress to be less needy than those completely without resources—persons or households that have available other sources of income or resources with which to support themselves.

*O'Bannon, supra,* 715 F.2d at 808–09, *citing Philadelphia Citizens in Action v. Schweiker,* 669 F.2d 877, 879 (3d Cir.1982); *see Bell, supra,* 558 F.Supp. at 393–96; *Dickenson, supra,* 536 F.Supp. at 1119–20; *but see Turner, supra,* 707 F.2d at 1121 (Third Circuit observation is without citation of authority).

The statutory language embodying the purpose of AFDC, however, remains intact and reads, in relevant part:

For the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, ... to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent

with the maintenance of continuing parental care and protection ....

42 U.S.C. § 601.

Although the OBRA Congress made changes in benefits, it left intact the earlier language embodying the statutory purposes of AFDC. The Court consequently must interpret the statute and attempt to accommodate both purposes as well as possible.

OBRA reduced welfare benefits without requiring that taxes withheld be treated as work expenses.

Granting *arguendo* that OBRA's purposes were as stated by the Third Circuit, the congressional AFDC amendments which are not at issue in this case fully accomplish them. The major money-saving change in this aspect of AFDC arises out of the virtual elimination of the work incentive allowance. From 1967 to 1981, a working AFDC recipient was permitted to disregard $30 plus one-third of *gross* income *each* month. For someone employed full time at the minimum wage, this amounts to a sum of several hundred dollars monthly. Under OBRA, this disregard may be taken only on *net* income, and then for only the first four months *of eligibility;* a recipient may not again utilize this disregard until s/he has been off AFDC for a period of twelve consecutive months. Secondly, under pre-OBRA law, child care expenses were deductible in full. Now they are subject to a cap of $160 a month per child. Finally, other work-related expenses were deductible in full. Now they are subject to a maximum of $75 per month. None of these changes are disputed here ... they represent a substantial reduction of benefits.

*Turner, supra,* 707 F.2d at 1122; *see RAM, supra,* 564 F.Supp. at 645–47; *see also Dickenson, supra,* 692 F.2d at 179–80 (most important amendment to AFDC by OBRA said recipients could take advantage of the earned income disregard for no more than four months); *Bell, supra,* 558 F.Supp. 393 (it can be argued that the OBRA motive of avoiding administrative complexity and of curbing abuse is not served by including mandatorily withheld taxes since the amounts of such withholdings are easily verifiable; and it can also be argued that there are sufficient cost savings in other changes incorporated in OBRA).

If the Court is to give any meaning at all to the purpose of the AFDC Act, it must adopt plaintiffs' method of calculation. *Turner, supra,* 707 F.2d at 1123.

Habit and the essential caution of the human mind seek the easy comfort of past decisions and abjures responsibility for new determinations. Thus 'new' legislation usually 'ties' to past experience and prior enactment. Continuity of regulation and consistency of purpose is much more real than is generally supposed. The well-known legislative fact that it is easier to amend a law than to pass a new one supports the little known but vital legislative desire for continuity and respect for precedent.

*Sutherland, supra,* n. 5, § 45.10.

■ The Court finds and rules, therefore, that the term "income" as used in 42 U.S.C. § 602(a)(7) does not include tax withholdings, and that tax withholdings are not subject to the $75 standardized work expense deduction of 42 U.S.C. § 602(a)(8).

Accordingly, it is hereby ordered that defendants are permanently enjoined from calculating the amount of an AFDC grant by including taxes mandatorily withheld within the definition of "income" as used in 42 U.S.C. § 602(a)(7), or from including such taxes within the disregards provided for in 42 U.S.C. § 602(a)(8). The parties shall notify the Court within thirty (30) days if there are to be any further proceedings in this case.

SO ORDERED.